IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| STEPHEN R. WILSON, | § | |
| | § | |
| Plaintiff, | § | |
| | § | Civil Action No. 3:15-CV-3588-D |
| VS. | § | |
| | § | |
| SUE F. DAVIS, et al., | § | |
| | § | |
| Defendants. | § | |

MEMORANDUM OPINION
AND ORDER

In this action by plaintiff Stephen R. Wilson ("Wilson") alleging claims under 42

U.S.C. § 1983 and Texas law, defendants the City of Commerce, Texas (the "City") and Sue

F. Davis ("Davis") move to dismiss under Fed. R. Civ. P. 12(b)(6). For the reasons that

follow, the court grants the motion to dismiss Wilson's § 1983 claim, declines to reach his

state-law claims, and grants Wilson leave to replead.

I

The City hired Wilson in 2003, and from March 2014 through August 2015, he was

employed as an Assistant City Manager.[1] He is currently employed as the City's Director

of Public Works. Defendant Davis is a member of the Commerce City Council.

_____

[1]In deciding this Rule 12(b)(6) motion, the court construes Wilson's complaint in the
light most favorable to him, accepts all well-pleaded factual allegations, and draws all
reasonable inferences in his favor. *See, e.g., Lovick v. Ritemoney Ltd.*, 378 F.3d 433, 437
(5th Cir. 2004). "The court's review [of a Rule 12(b)(6) motion] is limited to the complaint,
any documents attached to the complaint, and any documents attached to the motion to
dismiss that are central to the claim and referenced by the complaint." *Lone Star Fund V
(U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010).

According to Wilson's complaint, in May 2015 Davis met with City Manager Marc Clayton ("Clayton"), accused Wilson of using City money to purchase cameras for his deer lease and of illegally purchasing a police radio, and told Clayton that "she wanted Wilson gone."  Compl. ¶ 30.  Clayton responded that he would not discharge Wilson until he investigated Davis' allegations.

Around the same time, Davis asked the City's Director of Finance for copies of City purchase orders.  Among the documents provided to Davis were purchase orders for game cameras, a motor for a lawn mower, a radio, gasoline purchased in Caddo Mills, and two boxes of ammunition.  Davis met with Clayton again and accused Wilson of making personal purchases with City money, including a game camera for Wilson's deer lease, a motor for lawn mower, and a police radio that was not approved and had been purchased from a firefighter.  Clayton responded that Davis' accusations were wrong and that all of the purchases were for City business and had been approved.[2]

After meeting with Clayton, Davis obtained documents from defendant Cypress Bank, FSB ("Cypress") that contained information about Wilson's personal bank accounts.  Wilson

---

[2]Wilson alleges that Clayton informed Davis that the game cameras were installed at the City's four sewer lift stations because of problems with tampering and vandalism; the lawn mower engine was for a City lawn mower at the City's airport; and the radio was for Wilson's use on the job.  Wilson asserts that Davis' subsequent accusation that Wilson had purchased ammunition for his personal use was also wrong: Wilson, a sworn peace officer licensed by the Texas Commission on Law Enforcement through the City, needed the ammunition so that he could qualify with his weapon.  Wilson also alleges that he purchased gasoline in Caddo Mills while he was driving to Eastfield College in Mesquite, Texas to take the State Peace Officer examination, which is required by the State of Texas.

alleges that Davis told the City's Mayor Pro Tem that she had "all this stuff [she] want[ed] to show [him]" about Wilson, and contacted him more than once about Wilson's personal bank accounts at Cypress. *Id*. at ¶ 41.   Davis also discussed Wilson's personal bank statement with Clayton, and she told a local businessman that "a million dollars is missing from the City," that Wilson was "the one who took it," and that Wilson had been taking City money by signing City checks. *Id.* ¶ 44.   Davis also told attendees at a budget workshop that Wilson was "committing felonies and misdemeanors," and she stated that she wanted the position of Assistant City Manager to be written out of the budget.[3]   *Id.* at 55 (italics and bold font omitted).   During a City Council meeting, the purpose of which was to discuss the performance evaluation of the City Manager, Davis presented the other City Council members a packet of items that she maintained showed that Wilson had used City funds to purchase goods for his personal benefit.   Without authorization from the City Council, Davis submitted the packet to the District Attorney's office.   Clayton later moved Wilson from his position as Assistant City Manager to the position of Director of Public Works, allegedly as part of a "reorganization."[4]   The 2015-16 budget did not include any allocation of money for

_____

[3]Wilson alleges that media outlets, including the *Greenville Herald Banner*, KETR.org, and the *Commerce Journal*, reported Davis' statements from the workshop.

[4]Wilson characterizes this move as a "demotion."   He alleges that, as Director of Public Works, he makes approximately $6,400 less than he made as Assistant City Manager. He also asserts that, in his position as Assistant City Manager, he oversaw Community Development, Animal Control, Airport, Public Works, Parks & Recreation, Airport advisory, Beautification, Planning & Zoning, and Board of Adjustments; in his position as Director of Public Works, he only oversees Public Works and the Airport.

the position of Assistant City Manager.

Wilson alleges that he requested, at least three times, an opportunity to answer Davis'
allegedly defamatory statements and clear his name.  Although various City officials,
including Clayton and the City's Mayor, agreed that Wilson should be given an opportunity
to defend himself, he was never given this opportunity.  After the District Attorney
completed his investigation of Davis' allegations against Wilson, he concluded:

> there isn't sufficient evidence to prove beyond a reasonable
> doubt that the allegations against Mr. Wilson would sustain a
> criminal prosecution.  As we discussed, while some of the
> allegations quite possibly warrant attention at the administrative
> and/or employment level, based upon the Ranger investigation,
> my office will not be filing criminal charges as to those
> allegations and [is] closing the matter.

Compl. Ex. B.

Wilson alleges that, as a result of Davis' actions, he has suffered and will continue to
suffer economic losses and mental anguish.  He filed the instant lawsuit against the City,
Davis, and Cypress, alleging a claim under 42 U.S.C. § 1983 against Davis and the City for
violating his Fourteenth Amendment right to a "procedural opportunity to clear him name,"
*id.* ¶ 124, and alleging various claims against Davis and Cypress under Texas law.[5]  Davis
and the City move under Rule 12(b)(6) to dismiss Wilson's § 1983 Fourteenth Amendment

---

[5]Wilson sues Davis and Cypress for invasion of privacy (inclusion on seclusion);
Cypress for invasion of privacy (public disclosure of private facts); Cypress for negligence
per se; Cypress for breach of express or implied contract; Davis and Cypress for civil
conspiracy; Davis in her individual capacity for defamation; and Davis in her individual
capacity for malicious prosecution.

claim.  Wilson opposes the motion.

II

Under Rule 12(b)(6), the court evaluates the pleadings by "accept[ing] 'all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff.'"  *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (quoting *Martin K. Eby Constr. Co. v. Dall. Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004)).  To survive defendants' motion, plaintiff's complaint must allege "enough facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant[s] [are] liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."  *Id.*; *see also Twombly*, 550 U.S. at 555 ("Factual allegations must be enough to raise a right to relief above the speculative level[.]").  "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'shown'—'that the pleader is entitled to relief.'"  *Iqbal*, 556 U.S. at 679 (brackets omitted) (quoting Rule 8(a)(2)).  Furthermore, under Rule 8(a)(2), a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  Although "the pleading standard Rule 8 announces does not require 'detailed factual allegations,'" it demands more than "'labels and conclusions.'"  *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).  And "'a formulaic recitation of the

- 5 -

elements of a cause of action will not do.'"  *Id.* (quoting *Twombly*, 550 U.S. at 555).

### III

Defendants maintain that Wilson has failed to plead a plausible due process claim under § 1983 based on the premise that Davis and the City denied him the opportunity to clear his name because Wilson has not alleged that he was discharged; because he has not alleged that a custom, policy, or practice of the City caused his alleged constitutional deprivation; and because Davis is entitled to legislative and official immunity.

### A

"Section 1983 provides a civil remedy in federal court for violations, under color of state law, of a person's constitutionally recognized rights, privileges, or immunities." *Bledsoe v. City of Horn Lake, Miss.*, 449 F.3d 650, 653 (5th Cir. 2006) (citing *Findeisen v. N.E. Indep. Sch. Dist.*, 749 F.2d 234, 236-37 (5th Cir. 1984)).  "If the government discharges an employee amidst allegations of misconduct, the employee may have a procedural due process right to notice and an opportunity to clear his name."  *Id.* (citing *Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 573 (1972)).  "A public employee, even an at-will employee, has a constitutional right to notice and an opportunity to be heard when the employee is 'discharged in a manner that creates a false and defamatory impression about him and thus stigmatizes him and forecloses him from other employment opportunities.'" *Bellard v. Gautreaux*, 675 F.3d 454, 461 (5th Cir. 2012) (quoting *Bledsoe*, 449 F.3d at 653). "Neither damage to reputation alone nor the stigma resulting from the discharge itself trigger the protections of due process."  *Bledsoe*, 449 F.3d at 653 (citing *Paul v. Davis*, 424 U.S.

693, 701 (1976); *Wells v. Hico Indep. Sch. Dist.*, 736 F.2d 243, 256 (5th Cir. 1984)) (footnote omitted).  "Rather, a liberty interest is infringed, and the right to notice and an opportunity to clear one's name arises, only when the employee is 'discharged in a manner that creates a false and defamatory impression about him and thus stigmatizes him and forecloses him from other employment opportunities.'" *Id.* (quoting *White v. Thomas*, 660 F.2d 680, 684 (5th Cir. Nov. 1981)).

The Fifth Circuit "employs a seven-element 'stigma-plus-infringement' test to determine whether § 1983 affords a government employee a remedy for deprivation of liberty without notice or an opportunity to clear his name." *Id.* (citing *Hughes v. City of Garland*, 204 F.3d 223, 226 (5th Cir. 2000)).

> The plaintiff must show: (1) he was discharged; (2) stigmatizing charges were made against him in connection with the discharge; (3) the charges were false; (4) he was not provided notice or an opportunity to be heard prior to the discharge; (5) the charges were made public; (6) he requested a hearing to clear his name; and (7) the employer denied the request.

*Id.* (citing *Hughes*, 204 F.3d at 226).

## B

The court begins with Wilson's § 1983 claim asserted against Davis in her individual capacity.  As *Bledsoe* and other cases make clear, Wilson's § 1983-based Fourteenth Amendment due process claim "lies against [his] government employer, not an employee or official of the government." *Harris v. City of Balch Springs*, 9 F.Supp.3d 690, 700 (N.D. Tex. 2014) (Lindsay, J.).  It is undisputed that Wilson's employer was the City, not Davis,

who is as a member of the City Council.  *See* Compl. ¶ 17 ("Wilson currently works for the

City.").  Moreover, Wilson does not even allege that Davis, as a member of the City Council,

was his employer.  Accordingly, as a matter of law, Davis cannot be held individually liable

to Wilson for a violation of his Fourteenth Amendment rights.  The court thus grants

defendants' motion to dismiss Wilson's § 1983 claim asserted against Davis in her individual

capacity.

C

To the extent Wilson brings his § 1983 claim against the City, Wilson has failed to

allege that he was deprived of a liberty interest protected by the Due Process Clause of the

Fourteenth Amendment.

In *Schultea v. Wood*, 27 F.3d 1112 (5th Cir. 1994), *on reh'g on other grounds*, 47 F.3d

1427 (1995) (en banc), the Fifth Circuit explained:

> To establish a liberty interest sufficient to implicate fourteenth
> amendment safeguards, the individual must not only be
> stigmatized but also stigmatized in connection with a denial of
> a right or status previously recognized under state law. . . .
> When an employee retains his position even after being defamed
> by a public official, the only claim of stigma he has derives from
> the injury to his reputation, an interest that [*Paul v. Davis*, 424
> U.S. 693 (1976),] reveals does not rise to the level of a liberty
> interest. The internal transfer of an employee, unless it
> constitutes such a change of status as to be regarded as
> essentially a loss of employment, does not provide the additional
> loss of a tangible interest necessary to give rise to a liberty
> interest meriting protection under the due process clause of the
> fourteenth amendment.

*Schultea*, 27 F.3d at 1117 (alteration in original) (quoting *Moore v. Otero*, 557 F.2d 435,

- 8 -

437-38 (5th Cir. 1977)) (affirming dismissal of Fourteenth Amendment due process claim where plaintiff was transferred from position as chief of police to assistant chief); *see also Gregory v. Tex. Youth Comm'n*, 45 Fed. Appx. 323, 2002 WL 1860571, at *4 (5th Cir. June 28, 2002) (holding that plaintiff failed to plead deprivation of liberty interest by alleging that he was demoted because "the challenged adverse employment action must be essentially a loss of employment," and "transfers and one-step demotions do not invoke constitutional protections." (citations omitted)); *Nix v. City of Galaen Park*, 15 F.3d 1079, 1994 WL 35630, at *4 (5th Cir. Jan. 31, 1994) (per curiam) (unpublished table decision) (holding that internal transfer from position as Assistant Chief of Police to position of captain did "not constitute such a change of status as to be regarded as essentially a loss of employment" where plaintiff received "the same or substantially similar salary and fringe benefits as he received during his employment as Assistant Chief of Police," and "[t]he only claim of stigma [plaintiff] possesse[d] derive[d] from the injury to his reputation, an interest that [did] not rise to the level of a liberty interest."); *Moore*, 557 F.2d at 437-38 (holding that internal transfer of police officer from position of corporal to police patrolman did not deprive plaintiff of liberty interest protected by Due Process Clause).

Wilson alleges that Clayton "moved [him]" from the position of Assistant City Manager to the position of Director of Public Works; that in his new position, he earns $6,400 less than he did as Assistant City Manager, which "mean[s] that less money would go into Wilson's retirement"; and that instead being "over" nine areas (Community Development, Animal Control, Airport, Public Works, Parks & Recreation, Airport advisory,

Beautification, Planning & Zoning, and Board of Adjustments), "[w]hen Clayton moved [him] to Director of Public Works, Wilson was over only Public Works and the Airport." Compl. ¶ 59. These allegations are insufficient to plausibly allege that Wilson's internal transfer—part of an alleged "reorganization" that resulted in the elimination of Wilson's former position—resulted in what was "essentially a loss of employment." *Schultea*, 27 F.3d at 1117 (quoting *Moore*, 557 F.2d at 438).

Wilson argues that "personnel decisions that are significant but fall short of an actual, express discharge have been found to support a deprivation of liberty claim." P. Br. 18. In support, he relies on two Fifth Circuit opinions, *Breaux v. City of Garland*, 205 F.3d 150 (5th Cir. 2000), and *Moore*, 557 F.2d 435. Neither of these cases, however, supports Wilson's position that all he is required to allege to support his deprivation of liberty claim is a "significant" personnel decision or an "impact on one's employment." P. Br. 18.

In *Moore* the Fifth Circuit stated in *dicta* that, "[i]f Moore had been transferred from corporal's duties to janitorial duties, his loss of status *might* present the type of loss of tangible interest connected with stigmatizing state action that . . . could give rise to a liberty interest." *Moore*, 557 F.2d at 438 n.11 (emphasis added). Although Wilson alleges a reduction in his job responsibilities and a change of title to the "less prestigious" position of Director of Public Works, P. Br. 19, he has not pleaded any factual content that would permit the court to draw the reasonable inference that his switch from Assistant City Manager to Director of Public Works would present a loss of status comparable to that referred to in *Moore. See Clemmer v. Irving Indep. Sch. Dist.*, 2014 WL 2475924, at *4 n.9 (N.D. Tex.

- 10 -

June 3, 2014) (Fitzwater, C.J.) (holding that plaintiff's allegation that she was transferred from Middle School Special Education Coordinator to an Elementary Dean, "a job with essentially no title," was insufficient to support deprivation of liberty interest claim), *appeals docketed*, Nos. 16-10493 and 16-10733 (5th Cir. Apr. 25, 2016 and June 6, 2016).   In any event, the quoted statement from *Moore* is *dicta*.   The *Moore* panel clearly held:

> [t]he internal transfer of an employee, unless it constitutes such a change of status as to be regarded essentially as a loss of employment, does not provide the additional loss of a tangible interest necessary to give rise to a liberty interest meriting protection under the due process clause of the fourteenth amendment.

*Moore*, 557 F.2d at 438 (footnote omitted).

In *Breaux* the Fifth Circuit held that the plaintiffs had failed at trial to establish an adverse employment action as was required to establish their constitutional claim for *retaliation against the exercise of First Amendment rights.  Breaux*, 205 F.3d at 156, 164. The plaintiffs in *Breaux* did not even allege a Fourteenth Amendment deprivation of liberty claim.   Moreover, the language from *Breaux* that Wilson quotes in his brief is taken out of context.   The *Breaux* panel simply explained that, for purposes of their First Amendment retaliation claim, the plaintiffs could not establish an adverse employment action by alleging that their employer defamed them:

> [t]he Plaintiffs' concern with the publication of the Internal Affairs investigations to the media suggests that they want to import defamation into the adverse employment prong of their retaliation claim.  But the Plaintiffs have not made a defamation claim, nor is defamation part of the present § 1983 action. Furthermore, this court has recognized that "[w]hen an

> employee retains his position even after being defamed by a public official, the only claim of stigma he has derives from the injury to his reputation, an interest that [*Paul v. Davis*, 424 U.S. 693 (1976),] reveals does not rise to the level of" a Fourteenth Amendment violation. Stigma by itself, without an impact on one's employment, does not constitute an adverse employment action.

*Breaux*, 205 F.3d at 158 n.14 (second and third alterations in original)(citations omitted).

This court is therefore bound by the clear language in *Schultea* that "the internal transfer of an employee, unless it constitutes such a change of status as to be regarded as essentially a loss of employment, does not provide the additional loss of a tangible interest necessary to give rise to a liberty interest meriting protection under the due process clause of the fourteenth amendment." *Schultea*, 27 F.3d at 1117 (quoting *Moore*, 557 F.2d at 438). Construing Wilson's complaint in the light most favorable to him, accepting as true all well-pleaded factual allegations, and drawing all reasonable inferences in Wilson's favor, the court concludes that Wilson has not pleaded facts sufficient to permit the court to draw the inference that the internal transfer from the position of Assistant City Manager to the position of Director of Public Works, as part of an alleged "reorganization" in which the position of Assistant City Manager was eliminated, constituted such a change of status as to be regarded as essentially a loss of employment. *Id.* (quoting *Moore*, 557 F.2d at 438). Accordingly, because Wilson has failed to allege that he was deprived of a liberty interest protected by the Due Process Clause of the Fourteenth Amendment, and because Wilson alleges no other constitutional deprivation in support of his § 1983 claim against Davis or the City, the court

grants the motion to dismiss this claim.[6]

## IV

Wilson also asserts state-law claims for invasion of privacy (inclusion on seclusion and public disclosure of private facts), negligence per se, breach of express or implied contract, civil conspiracy, defamation, and malicious prosecution.  Although this court can exercise supplemental jurisdiction over the state-law claims under 28 U.S.C. § 1367(a), "when all federal claims are dismissed or otherwise eliminated from a case prior to trial, [the Fifth Circuit has] stated that [its] 'general rule' is to decline to exercise jurisdiction over the pendent state law claims."  *McClelland v. Gronwaldt*, 155 F.3d 507, 519 (5th Cir. 1998) (citing *Wong v. Stripling*, 881 F.2d 200, 204 (5th Cir. 1989)), *overruled on other grounds by Arana v. Ochsner Health Plan*, 338 F.3d 433, 440 (5th Cir. 2003) (en banc).  Having dismissed Wilson's federal-law claim, the court in its discretion declines at this time to exercise supplemental jurisdiction over his state-law claims.[7]  Indeed, this is a case in which the state-law claims can be seen as dwarfing Wilson's § 1983 claim.  And unless on repleading Wilson can state a plausible § 1983 claim, he is likely headed to state court to pursue the balance of this litigation.

---

[6]Because the court is granting defendants' motion to dismiss on this ground, it does not reach their other grounds for dismissing Wilson's § 1983 claim.

[7]Because the court is dismissing Wilson's state-law claims asserted against Davis, it does not reach Davis' motion to dismiss all claims asserted against her based on the affirmative defenses of absolute legislative immunity and official immunity.

- 13 -

V

Although the court is granting defendants' motion to dismiss under Rule 12(b)(6), it will permit Wilson to replead. *See, e.g., In re Am. Airlines, Inc., Privacy Litig.*, 370 F.Supp.2d 552, 567-68 (N.D. Tex. 2005) (Fitzwater, J.) (noting that district courts often afford plaintiffs at least one opportunity to cure pleading deficiencies before dismissing case, unless it is clear that defects are incurable or plaintiffs advise court that they are unwilling or unable to amend in a manner that will avoid dismissal). Because there is no indication that Wilson cannot, or is unwilling to, cure the defects that the court has identified, the court grants Wilson leave to file an amended complaint within 28 days of the date this memorandum opinion and order is filed.

\*   \*   \*

For the reasons explained, the court grants defendants' motion to dismiss Wilson's § 1983 claim, declines to exercise supplemental jurisdiction over Wilson's state-law claims, and grants Wilson leave to file an amended complaint within 28 days of the date this memorandum opinion and order is filed.

**SO ORDERED**.

September 8, 2016.

SIDNEY A. FITZWATER
UNITED STATES DISTRICT JUDGE